No. 34,211

NUTRENA MILLS, INC., *Appellant*, v. THE KANSAS STATE TAX COM-MISSION, and W. G. FINK, C. C. COGSWELL and LESTER LUTHER, Members of the Commission (COMMISSION OF REVENUE AND TAXA-TION OF THE STATE OF KANSAS, and J. B. McCUISH, WILLIAM LJUNGDAHL and MARC BOSS, Members of the Commission, Sub-stituted), *Appellees.*

(91 P. 2d 15)

Opinion filed June 10, 1939.

*Thomas F. Doran, Clayton E. Kline, M. F. Cosgrove, Balfour S. Jeffrey, Robert E. Russell,* all of Topeka, and *M. W. Borders, Jr.,* of Kansas City, Mo., for the appellant.

*D. C. Hill,* of Wamego, *Frank G. Theis,* of Arkansas City, and *John K. Speck,* of Topeka, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: An income taxpayer appealed to the district court from an order of the state tax commission denying certain deductions claimed by the taxpayer. After a hearing, at which many of the facts were stipulated, the district court rendered judgment for the tax commission. The taxpayer has appealed.

The facts, some of which are more historical than directly pertinent, are not seriously controverted and may be stated as follows: In 1926 the Nutrena Feed Mills, Inc., was organized under the corporation laws of Missouri. Its principal business was the manufacture and sale of feeds for livestock. Its principal manufacturing plant was situated in Kansas, and it was duly authorized to do business in this state. Its shares of stock were owned by Van Roy Miller and Harry E. Fisher. In 1930 it purchased another plant from the Schreiber Milling and Grain Company, located at Minneapolis, Minn., for $100,000, of which $10,000 was paid in cash and the balance represented by nine notes of $10,000 each, payable one each year, and secured by a mortgage on the Minneapolis plant. In 1931 and 1932 the business was not as profitable as it had been

previously and differences arose between Miller and Fisher over the management of the business and the purchase of the Minneapolis plant. As a result of conferences between them it was agreed that the Nutrena Feed Mills, Inc., would sell to Miller, or to a corporation organized by him, its Kansas City, Kan., plant. Miller organized, under the laws of Missouri, the Nutrena Mills, Inc., and through it purchased the Kansas City, Kan., plant in November, 1932. Miller owned all the stock of the Nutrena Mills, Inc., and it was duly authorized to transact business in Kansas.

In May, 1933, the Nutrena Feed Mills, Inc., defaulted on its $10,000 payment to the Schreiber Milling and Grain Company, and that company brought suit on the seven unpaid $10,000 notes against the Nutrena Feed Mills, Inc., in the federal court at Kansas City, Mo., and obtained judgment on those notes for approximately $75,000 sometime in the spring of 1934. While that action was pending Miller, who was the sole stockholder of the Nutrena Mills, Inc., the better, as he thought, to operate that company and finance it, organized the Miller Management Corporation (originally the Miller Investment Company) under the laws of Missouri. To this company was transferred all of the capital stock of Nutrena Mills, Inc.

On June 23 (effective as of June 1), 1934, the Nutrena Mills, Inc., as first party, entered into a written contract with the Miller Management Corporation, as the second party, the material portions of which read:

"1. First party hereby employs second party to furnish to first party complete managerial superintendence and executive control for the proper efficient economical operation of the business and affairs of the first party. Second party accepts such employment and agrees to furnish proper efficient control over and operation of the business and affairs of first party and to exercise its best efforts in providing the necessary control and supervision over the affairs of first party. It is the intention of the parties that first party will be relieved of the burden of the salary of its president, which burden will be assumed by second party.

"2. Second party further agrees that it will at all times provide proper and sufficient financing for the operations of first party, either directly itself or through loans or other advances from banks or other parties. It is the intention of the parties that first party will be completely relieved of the burden and responsibility of financing its operations, which responsibility will be assumed by second party as it is well equipped and qualified for such purpose."

(The third paragraph pertains to the use of certain trade-marks.)

"4. In consideration of all of the above, first party agrees to pay second party, effective as of June 1, 1934, the sum of four and 50/100 ($4.50) dollars

for each ton of feed manufactured by first party for second party's services under paragraphs 1 and 2 hereof, and the sum of fifty cents (50¢) for each ton of feed so manufactured for the use of the trade-marks under paragraph 3 hereof. Payment will be made on or before the 10th day of each month for the services of second party furnished during the preceding month."

For the year 1935 this contract was changed so that the payments to the Miller Management Corporation were $3.25 per ton instead of $4.50.

On March 15, 1935, the Schreiber Milling and Grain Company brought an action in the district court of Wyandotte county, Kansas, in the nature of a creditor's bill, against the Nutrena Mills, Inc., and Miller Management Corporation, to subject their assets to the payment of the judgment it had obtained against the Nutrena Feed Mills, Inc., in the federal court of Missouri. On the trial of that case judgment was rendered for defendants and this was affirmed. (*Schreiber Milling Co. v. Nutrena Mills, Inc.*, 149 Kan. 276, 87 P. 2d 577.) While this case is mentioned in the briefs perhaps it has but little application here.

In making its income tax return for the years 1934 and 1935 the Nutrena Mills, Inc., asked to have deducted from its income $47,-308.85 for the year 1934 and $129,001.67 for the year 1935 because of management and financial charges. These were the sums shown by its books to have been paid for those years to the Miller Management Corporation under the contracts above mentioned. In respect to these items the state tax commission allowed to be deducted $7,000 for the year 1934 and $33,580 for the year 1935, these sums being the amounts actually paid by the Miller Management Corporation for salaries of the officers of the Nutrena Mills, Inc. The balance of the payments of the Nutrena Mills, Inc., to the Miller Management Corporation for those years was treated as dividends and taxable as income. These are the two items in controversy.

The specific portion of our statute (G. S. 1935, 79-3206) necessary to be considered reads as follows:

"In computing net income there shall be allowed as deductions: (1) All the ordinary and necessary expenses paid during the taxable year in carrying on any trade or business."

Under authority of statute the state tax commission has made, among others, the following regulation, the validity of which is not questioned:

"A reasonable allowance for salaries or other compensation paid for personal services actually rendered is deductible. The test of deductibility of such pay-

ments is whether they are reasonable consideration for the services rendered and whether they are in fact payments purely for service. If an ostensible salary paid by a corporation is in excess of those ordinarily paid for similar services, and the excessive payments correspond or bear a close relationship to the stock holdings of the recipients, the excess deduction will be disallowed to the corporation and taxed as a dividend to the recipient. . . ."

Appellant presents for our review the question, first, whether the ruling of the state tax commission disallowing deductions of $47,-308.85 for 1934 and $129,001.67 for 1935 for management and financial expenses was reasonable and proper.

It should be observed that the tax commission did not disallow these claimed deductions in their entirety. It allowed deductions for the purposes stated of $7,000 for 1934 and of $33,580 for 1935, these being the sums for the respective years which the Miller Management Corporation paid as salaries of officers and employees of the Nutrena Mills, Inc. Unless the ruling of the tax commission was in violation of law, or was induced by fraud, or for some other reason was arbitrary and capricious, the question of the reasonableness of the ruling was for the tax commission. In such a case the court would not be justified in substituting its judgment for that of the tax commission.

We next are presented with the question whether the state tax commission has the authority and power to disregard facts showing an agreement for compensation to be reasonable at the time when made because in the light of subsequent developments, not anticipated at the time, the compensation turned out to be excessive.

Appellant's argument on this point is predicated primarily upon the contention that the evidence before the tax commission and the trial court was conclusive that the contract between Nutrena Mills, Inc., and Miller Management Corporation, made in June, 1934, was reasonable when made. That premise is erroneous. The evidence on that point was to this effect: The Nutrena Mills, Inc., and its predecessor, Nutrena Feed Mills, Inc., in the conduct of its business, had occasion to borrow substantial sums of money, particularly during certain seasons of the year; that because of the circumstances under which the Nutrena Mills, Inc., had been organized, and because of the legal actions pending or threatened by the Schreiber Milling Company against Nutrena Feed Mills, Inc., and the possibility that Nutrena Mills, Inc., might be involved, the banks, in June, 1934, declined to make loans directly to Nutrena Mills, Inc., and for that reason it became necessary to have some other indi-

viduals or corporation borrow the money and loan it to Nutrena Mills, Inc. There was evidence that the Miller Management Corporation borrowed from one of the Kansas City banks $40,000 in 1934 at five percent interest, which it loaned to Nutrena Mills, Inc., for six percent interest, taking security therefor; also that in 1934 Miller personally loaned, through the Miller Management Corporation, $7,000 to Nutrena Mills, Inc., and that in the year 1935 the Miller Management Corporation borrowed $41,000 from a Kansas City bank, which likewise it loaned to the Nutrena Mills, Inc., and in addition secured from other sources, being from Miller, his wife and immediate associates, $22,000, which it loaned to Nutrena Mills, Inc. With respect to these loans we first note that the taxpayer asked for deductions for all the interest it paid during those years, and this was allowed by the tax commission; that the Miller Management Corporation actually made a profit of one percent on the money it borrowed from the Kansas City bank and loaned to Nutrena Mills, Inc., and that these loans to Nutrena Mills, Inc., were secured by mortgages on its assets. We note the further fact that, so far as this record discloses, the Miller Management Corporation was simply a holding company for Nutrena Mills, Inc. All of the stock in each of them, even including the few shares issued to persons who held official positions in the companies, was owned by Miller. Just why the bank should feel more secure to make its loans to the Miller Management Corporation than directly to Nutrena Mills, Inc., is not apparent, and is perhaps of no importance here. It is sufficient to know that was the way it was done. The transaction, however, is open to the interpretation that this was done at the instance of Miller and for the purpose of protecting himself against the result of the actions pending, or threatened, by the Schreiber Milling Company against Nutrena Feed Mills, Inc.

Under this head it is argued by appellant that the sum of $4.50 per ton for 1934 and $3.25 for 1935, which the Nutrena Mills, Inc., agreed to pay the Miller Management Corporation for its services, was reasonable when it was made. It is said, and there were affidavits and parol evidence on behalf of the taxpayer to the effect, that because of the serious drouth and depressed financial conditions the feed manufacturing business had not been good; that its officers did not anticipate it would do anything like as much business in 1934 and 1935 as it developed it did do. It is argued, if the sums paid Miller Management Corporation by the Nutrena Mills, Inc., in the

years 1934 and 1935 now seem large in comparison with the services performed, that is a result which could not have been anticipated. Authority is cited that an agreement for the financing of a corporation or a business, reasonable when made, should not be set aside because subsequent changed conditions caused the payments to be much larger.than could have been anticipated at the time the agreement was made. (*Austin v. United States*, 28 F. 2d 677.) The reports of Nutrena Mills, Inc., to the tax commission for 1933 show its net profits per ton to have been 46 cents plus, and for 1934, up to June 1, to be. $1.85. There is no evidence in this record that at any time prior to the making of this contract the net profits per ton of the manufactured products of the Nutrena Mills, Inc., or of its predecessor, had ever been anything like $4.50 per ton. Hence, the agreement is open to the interpretation that the price per ton which by its contract of June, 1934, the Nutrena Mills, Inc., agreed to pay the Miller Management Corporation for its management and financial services was fixed so high that it would take all of the profits of the Nutrena Mills, Inc., even though they might be greatly in excess of the previous profits of the company. It is possible this was done because of Miller's desire further to protect himself from the legal actions pending, or threatened, by the Schreiber Milling Company against Nutrena Feed Mills, Inc. There was no finding by the tax commission that the agreement was reasonable when it was made, neither was such a finding made by the trial court. The order of the tax commission and the judgment of the trial court on this point had the effect and should be construed as amounting to a finding that the contract was not reasonable when made. Hence, there is no sound basis for the principal argument of appellant that since the contract was reasonable when made, large payments made under it because of subsequent conditions, which could not have been anticipated when the contract was made, should not be taken into account.

Appellant presents the further question whether the order of the state tax commission was unreasonable and arbitrary because no deduction was allowed for services and financial assistance rendered by the Miller Management Corporation to the Nutrena Mills, Inc. On this point it is conceded that the commission allowed as a deduction the salaries of officers and employees of the Nutrena Mills, Inc., paid by the Miller Management Corporation, and no question was raised as to those items, as reported. But it is contended that

an additional deduction should have been made for the services of the Miller Management Corporation in financing Nutrena Mills, Inc. As previously noted, the Miller Management Corporation made a profit on the money it borrowed and loaned the Nutrena Mills, Inc., and that these loans, as well as the loans made by Miller and his associates, were amply secured, and that a deduction was made for all the interest paid on these loans by Nutrena Mills, Inc. We are unable to see from the record that any specific request was made by the taxpayer for the tax commission to make a separate and distinct deduction for this financing service. At any rate, the record is barren of any evidence by bankers, economists, or anyone else, as to the reasonable value of such service; therefore, we think this point not well taken.

It is stipulated that the Miller Management Corporation never was authorized to do business in Kansas, and the evidence is that it performed all of its services for Nutrena Mills, Inc., in the state of Missouri. It is stipulated that it made an income tax return to the state of Missouri, which included the payments from Nutrena Mills, Inc., and that it paid its income taxes thereon. We do not regard this fact as having any bearing. The Nutrena Mills, Inc., had its manufacturing plant in Kansas and transacted its business in this state and is liable for income taxes here. If, as argued by appellee, it was to siphon out of this state and into another state the profits made by Nutrena Mills, Inc., in Kansas by a contract to pay the out-of-state corporation a sum grossly in excess of the reasonable value of its services to Nutrena Mills, Inc., that fact should not defeat the collection of the income tax from the Nutrena Mills, Inc., by this state.

It is stipulated that both the Nutrena Mills, Inc., and Miller Management Corporation made their income tax returns to the federal government; that in doing so Nutrena Mills, Inc., reported having paid for management and financial expenses items of $47,-308.85 and $129,001.67 in the years 1934 and 1935, and the Miller Management Corporation reported having received those sums, and that the federal income taxes thereon were paid to the bureau of internal revenue by the Miller Management Corporation. We do not regard that fact as having any bearing here. It is conceded the ruling of the bureau of internal revenue on that question is not *res judicata* in this case. More than that, so far as the federal government is concerned, if it actually received payment of the tax upon the income of the Nutrena Mills, Inc., it is immaterial to it whether

they were collected from that company or from the Miller Management Corporation. Here the matter is material. Since the Miller Management Corporation is one organized under the laws of another state and is not authorized to do business in this state, and in fact did no business here, this state would not be entitled to an income tax from it. So the question, after all, gets back to whether or not the payments actually made by the Nutrena Mills, Inc., to the Miller Management Corporation for the years in question were in excess of the reasonable services performed. It is not contended that the order of the tax commission violated any specific laws of this state, neither is it contended that it was induced by fraud. Upon the evidence before the tax commission it cannot be said that its order was unreasonable. The trial court made no finding to that effect.

It is well settled that the tax found by the tax commission to be due is presumed to be valid; the taxpayer has the burden of showing its invalidity. (*United States v. Reitmeyer*, 11 F. 2d 648.) Deductions from gross income are allowed as a matter of legislative grace. A taxpayer seeking a deduction in computing taxable income must be able to point to an applicable statute and show that he comes within its terms. (*White v. United States*, 59 S. Ct. 179.) The fact the taxpayer has entered into a contract with stockholders, officers, or others to pay a fixed portion of its income for salary or other services does not, standing alone, make the amount paid under such a contract "ordinary and necessary expenses" of conducting the trade or business. (*Samuel Heath Co. v. United States*, 2 F. Supp. 637; *Hecht v. United States*, 54 F. 2d 968; *Traylor Engineering & Mfg. Co. v. Lederer*, 271 Fed. 399; *Moxa Building Co. v. Commissioner of Internal Revenue*, 31 B. T. A. 457; affirmed, 79 F. 2d 1004.)

Whether such payments are ordinary and necessary expenses of the business, and the reasonableness of the sums paid, are always open to inquiry. A variety of circumstances have been considered by the courts in the cases collected in American Digest System, Internal Revenue, Key No. 7 (17) (18). In some instances the deduction claimed was allowed, in others it was denied, depending on the facts shown. It would serve no useful purpose to cite and analyze these cases. We have examined all of them cited by counsel and many more. We find nothing in them which would require or justify the reversal of the judgment of the trial court in this case, and it is therefore affirmed.