No. 40,230

CRAWFORD MANUFACTURING COMPANY, INC., *Appellant,* v. STATE COMMISSION OF REVENUE AND TAXATION OF THE STATE OF KANSAS, *Appellee.*

(304 P. 2d 504)

Opinion filed December 8, 1956.

Robert P. Lyons, of Kansas City, Missouri, argued the cause; Robert F. Bennett, of Prairie Village and Michael Seltzer, of Leawood, were on the briefs for appellant.

Ervin G. Johnston, of Kansas City, argued the cause, and Paul Hurd, of Topeka, was with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This appeal arises under the income tax law as applied to a multi-state corporation whose gross income is derived from property located and business transacted in part within and in part without the state of Kansas. The principal question involved is the proper method of determining appellant's income allocable to Kansas for income tax purposes.

Appellant, a Virginia corporation, is engaged in a multi-state manufacturing and selling business. It filed its Kansas income tax return for the taxable year ending July 31, 1949, and reported a net income subject to tax in Kansas of $128,469.83. Appellant used the "direct or separate accounting" method to allocate its income to Kansas, which, it contends, was authorized by G. S. 1949, 79-3217. The Kansas Director of Revenue disallowed appellant's accounting method and issued an assessment for additional Kansas income tax. Appellant appealed from this assessment to the State Commission of Revenue and Taxation, hereafter referred to as the commission. The commission found that the business of appellant was unitary in character with respect to the ownership and management of its three plants; that products manufactured in its Kansas plant were sold partly through a selling organization outside Kansas and partly through its Kansas office; that the raw materials used in the manufacture of its finished products were purchased by a central purchasing department at Richmond, Virginia; that the direct or separate accounting method used by appellant did not clearly reflect income subject to tax in Kansas; that the manufacturing profit reported on its Kansas income tax return was arbitrary, representing the opinion of appellant; that its income allocable to Kansas must be determined by the "factor formula" prescribed in G. S. 1949, 79-3218 and Kansas Income Tax Regulation 94-4-86, and referred

the assessment back to the Director of Revenue with directions that appellant's tax be computed in accordance with the "factor formula" method and the pertinent regulation. On January 26, 1954, appellant perfected its appeal to the district court of Wyandotte County, Kansas, and the action was tried pursuant to G. S. 1949, 74-2426. The facts were stipulated and no oral testimony was offered. The transcript of hearing before the commission and its order, together with appellant's income tax return for the taxable year in question, were attached to the stipulation and made a part of the record.

The stipulation disclosed that appellant's home office was in Richmond, Virginia, and that it was admitted to transact business in the state of Kansas as a foreign corporation with its principal place of business in Kansas City, Kansas; that it manufactured and sold automobile seat covers, canvas awnings, hassocks, tarpaulins, porch accessories, furniture slip covers and related items; that it maintained and operated three manufacturing plants: one located in Richmond, Virginia, one in Dallas, Texas, and one in Kansas City, Kansas, and it had assigned to each manufacturing plant a separate and distinct geographical area of distribution and maintained a separate sales force for each area; that in addition to each plant's sales force, it maintained sales offices in Chicago and New York and all sales made through these offices of goods manufactured in Kansas, or by salesmen assigned to the Kansas plant distribution area, were subject to acceptance by appellant at its Kansas office; that separate books of account were kept by it for each of the Kansas, Virginia and Texas operations, and all direct expenses were charged directly on the books of account of each plant; and, that all sales made by the Kansas operation were entered on its separate books of account and were reported to Kansas for income tax purposes.

The stipulation further disclosed that purchases of unfinished goods for its three manufacturing plants were made principally through appellant's Richmond, Virginia, office; that these unfinished goods were shipped directly from the vendor to the manufacturing plant and appellant charged the invoice price, *i. e.*, actual cost of the goods purchased, to the plant where the goods were delivered; that during the taxable year involved, approximately 6½ percent of the total purchases entered by appellant on the books of its Kansas plant were "purchases" from its Virginia plant of semi-finished goods; that in charging the Kansas plant for the value of semi-

finished goods, appellant charged its Virginia plant's "cost" (includ-
ing a profit factor) or "market," whichever was lower; that during
the same period the Kansas plant "sold" finished goods manufac-
tured by it to the Virginia or Texas plants, which totaled in the sum
of $11,993, and amounted to approximately 0.4 percent of the total
sales of the Kansas plant; with respect to these sales, appellant
charged to the books of the Virginia and Texas plants its regular
catalog price less 2 percent discount, less 2 percent for handling,
less sales commission varying in amounts from 3 to 6 percent; that
appellant allocated to its Kansas plant general overhead expenses
determined by it on a time basis the sum of $16,520, of which
$13,640 was attributable to home office salaries or 21.7 percent of
total salaries apportioned among its three plants; and, that appel-
lant apportioned its federal income tax among its three plants on
the basis of the net profit it computed each plant earned.

The district court rendered judgment in favor of the commission,
and made findings of fact and conclusions of law, which, omitting
findings of fact 1, 2 and 3, not here pertinent, read:

### "FINDINGS OF FACT

"4. The appellant, during the year involved, maintained a central pur-
chasing department at Richmond, Virginia, through which it purchased sub-
stantially all unfinished goods used by the various manufacturing plants.

"5. The appellant, during the year involved, sold its products manufactured
at its Kansas plant in Kansas and in other states.

"6. The appellant's business carried on in Kansas during the year in-
volved was not separate and distinct from its business carried on in other
states, but was rather an integral part of such business.

"7. There is no showing that appellee's Order herein appealed from is
unreasonable, arbitrary or capricious."

### "CONCLUSIONS OF LAW

"1. The appellant's business, during the year involved, was unitary in
character and was such as to render the direct allocation method of report-
ing its income for Kansas Income Tax purposes impracticable.

"2. The appellant's Kansas Income Tax Return for the taxable year ended
July 31, 1949, as filed by it, does not clearly reflect its net income subject to
tax under the Kansas Income Tax Act.

"3. Appellee's Order requiring appellant to use the factor formula method
of allocating its income to Kansas for Kansas Income Tax purposes is in ac-
cordance with G. S. Kan. 79-3218.

"4. Appellee's Order does not conflict with the United States Constitution
and is fair and reasonable and should be sustained."

Appellant has appealed, and specifies the district court erred in
two respects. *First*, in holding that (1) appellant's business was

of such a unitary character as to require allocation of income according to the "factor formula"; (2) its income tax return for the taxable year involved did not clearly reflect its net income derived from property located and business transacted in Kansas; (3) in order for appellant to prevail, it must show the order of the commission was arbitrary and capricious. *Second,* in refusing to hold that (1) Kansas Income Tax Regulation 94-4-86 was unreasonable, arbitrary and capricious and inconsistent with G. S. 1949, 79-3217; (2) the order of the commission was in violation of the commerce clause (Art. 1, § 8, clause 3) and the equal protection clause (14th Amendment) of the Federal Constitution.

At the outset we direct attention to the income tax statute in effect during July, 1949, which is G. S. 1949, Ch. 79, Art. 32. References are hereafter made to the chapter and article of that statute except as are expressly noted for the reason it has since been amended in several respects.

As preliminary to discussing questions here presented, a brief review of pertinent sections of the Kansas Income Tax Law is helpful in considering the contentions of the parties. Corporations are required to pay annually a tax on net income "derived from property located and business transacted within this state." (79-3203 [b].) "Net income" is defined (79-3209) as meaning "'gross income' less the deductions allowed by this act," which shall be computed on the basis of the taxpayers' annual accounting period pursuant to accounting methods regularly employed, but if no such method has been employed, or "if the method employed does not clearly reflect the income, the computation shall be made in accordance with such methods *as in the opinion of the Director of Revenue does clearly reflect the income."* (Emphasis ours.) Corporations subject to taxation are required to make a return stating specifically the items of gross income and deductions and credits allowed. (79-3220 [c].)

Where a corporation's gross income is derived from property located and business transacted in part within and in part without this state our statutes (79-3217, 79-3218 and 79-3219) provide for allocating income attributable to Kansas. Generally speaking, two methods are provided and they are referred to by tax administrators as the "direct or separate accounting" and "factor formula" methods. These two methods vary greatly, both in their underlying theory and in their practical operation and effect. One of the great-

est controversies in the field of allocation of income is the question presented here, *i. e.,* which method shall be employed to clearly reflect net income? The "direct or separate accounting" method (79-3217) authorizes "direct allocation of such income may be made *where practicable* on the books of account and records of the taxpayer, together with the deductions applicable thereto, where such methods *clearly reflect the net income* . . ." (Emphasis ours.) This is the section appellant relies upon. We have previously interpreted this section as having to do only with situations where books of account clearly reflect income and deductions. (*Union Pac. Rld. Co. v. State Tax Comm.,* 145 Kan. 715, 68 P. 2d 1.)

The "factor formula" method (79-3218) applies "where the nature of the business is such as to render direct allocation *impracticable or where the books of account and records do not clearly reflect the net income.* . . ." (Emphasis ours.) This is the section the Director of Revenue and the commission on appeal, applied in determining that additional tax was owed by appellant. Broadly speaking, the statute directs that in computing net income pursuant to this method it shall be allocated by taking the arithmetical average of the following factors: the ratio of costs of Kansas property to the costs of property everywhere; the ratio of costs of Kansas manufacturing or selling to the cost of manufacturing or selling everywhere; and, the ratio of Kansas gross sales to gross sales everywhere. The arithmetical average thus obtained is applied against the net income of the entire business and income attributable to Kansas is thereby determined. A second "factor formula" is provided (79-3219) for special cases where otherwise literal compliance with the methods provided in 79-3217 or 79-3218 would be impracticable, inequitable, or work undue hardship upon the taxpayer. This method is not involved in this appeal.

Appellant first contends that its business is not unitary and hence it is not a proper subject for the application of the factor formula method. The district court found that appellant's business carried on in Kansas was not separate and distinct from its business carried on in other states, but was an integral part of such business and concluded as a matter of law that its business was unitary in character. Our review of appellant's contention is limited to ascertain whether the record contains substantial evidence which supports, or tends to support, this finding. If it does, the finding is conclusive and will not be disturbed on review even though the record dis-

closes some evidence which might warrant the district court in making a finding to the contrary. (1 Hatcher's Kansas Digest, Appeal and Error, § 507, and 2 West's Kansas Digest, Appeal and Error, § 989.)

Appellant concedes that the use of the factor formula is proper where a multi-state business is unitary in character. The question, therefore, arises: what is a unitary business and were appellant's operations of that character? A multi-state business is unitary when the operations conducted in one state benefit and are benefited by the operations conducted in another state or states. The essential test to be applied is whether or not the operation of the portion of the business within the state is dependent upon or contributory to the operation of the business outside the state. If there is such relationship, the business is unitary. Stated another way, the test is whether a business' various parts are interdependent and of mutual benefit so as to form one business rather than several business entities and not whether the operating experience of the parts is the same in all places. (Altman and Keesling, Allocation of Income in State Taxation, 1946, pp. 89 to 102; *Western Auto Supply Co. v. Commissioner of Taxation*, 245 Minn. 346, 71 N. W. 2d 797.) Various portions of a business may be carried on exclusively in different states without destroying its unitary character if the integral parts are of mutual benefit to one another. Many authorities support this rule, a few of the leading ones are: *Underwood Twriter Co. v. Chamberlain*, 254 U. S. 113, 41 S. Ct. 45, 65 L. ed 165; *Bass, Etc., Ltd., v. Tax Comm.*, 266 U. S. 271, 45 S. Ct. 82, 69 L. ed. 282; *Butler Bros. v. McColgan*, 315 U. S. 501, 62 S. Ct. 701, 86 L. ed. 991.

Whether a particular multi-state business is separate or unitary depends upon the manner in which its business is conducted. Appellant, in an analysis of the operation of its business, treats it as if it were made up of independent and separate business entities. That premise is erroneous. Each of its operations was interdependent upon the other, and those conducted in one state mutually benefited those conducted in another state or states, so that one integral business was carried on. Complete and ultimate direction of its operations were vested in its home office in Virginia. The books of account and records of the Virginia, Texas and Kansas manufacturing plants were kept there; its fiscal policies were planned and carried out there; its advertising methods were adopted and purchased there; the development of new merchandising methods and

new sales lines were worked out there; and, a central purchasing division was maintained there through which all raw materials used by its three manufacturing plants were procured. Appellant stresses the fact that all orders for the sale of goods manufactured in Kansas, including those obtained through its sales offices in New York and Chicago, were only acceptable at the Kansas plant and were, therefore, Kansas sales; that the income from them was entered on the separate books of account of the Kansas operation and was reported to Kansas for income tax purposes. This income was derived from a series of transactions; the purchase of raw materials by its central purchasing division from points in Virginia or elsewhere; the transportation of such materials to the Kansas plant and its manufacture of them into finished products and their ultimate sale in Kansas and other states, or to the Virginia and Texas plants for resale in their geographical area of distribution; and, the striping of canvas into semi-finished products at the Virginia plant, their transportation to and fabrication by the Kansas plant into awnings and their subsequent sale throughout the country. These transactions clearly demonstrate the unitary character of appellant's business. In *Montgomery Ward & Co. v. State Tax Comm.*, 151 Kan. 159, 98 P. 2d 143, we said:

"In *Maxwell Comr. v. Mfg. Co.*, 204 N. C. 365, 168 S. E. 397, which was affirmed by the U. S. Supreme Court in 291 U. S. 642, 54 L. ed. 437, the court said:

" 'The bare fact of sale produces no income. It is merely the act by which the income is captured; the capital, the organization or efforts which produce the sale, are the things to be considered in ascertaining the amount of income to be credited to the sale'." (l. c. 168.)

Dependency of the three manufacturing plants upon the home office, its services and facilities contributed through central management, fiscal and purchasing policies, and in turn, the home office's dependency upon each of them, is evident by the following: The home office allocates a substantial part of its overhead expenses, including the cost of operating the central purchasing division, executives' salaries and various other expenses not subject to direct allocation to a particular plant, to the three plants pursuant to procedures adopted by it. Although each plant was only charged the actual cost of raw materials purchased, the fact that a "profit factor" was not included in the charge did not lessen the dependency of the Kansas plant upon the central purchasing division to procure

raw materials for it to manufacture and sell in Kansas and other states. Likewise, the Virginia plant was dependent upon the Kansas plant to "purchase" semi-finished canvas awnings from it. These purchases were sizeable and totaled $115,434.84, or were 6½ percent of total purchases (approximately $1,775,908) by the Kansas plant from the central purchasing division. In addition, these purchases included a "profit factor" to the Virginia plant.

Appellant cites and relies upon *Standard Oil Co. v. Thoresen,* 29 F. 2d 708; *Fisher v. Standard Oil Co.,* 12 F. 2d 744; *Standard Oil Co. v. Wisconsin Tax Comm.,* 197 Wis. 630, 223 N. W. 85; and *Magnolia Petroleum Co. v. Oklahoma Tax Com.,* 190 Okla. 172, 121 P. 2d 1008. We have read these authorities but they are not in point with respect to whether appellant's business was unitary. They deal with the question of whether the direct or separate accounting method was proper under the factual situation present in each of them. That is not the problem here for reasons hereafter noted.

When the foregoing test of whether a business is unitary is applied to the facts disclosed by the record, we are convinced appellant's argument that its business is not unitary, is without merit. There was unity of ownership and management, and the operation of the central purchasing division alone demonstrates clearly that appellant's home office and its three manufacturing plants stand in the relationship of reflected dependency, mutual contribution and mutual benefit.

Appellant next argues the district court erred in holding that its income tax return did not clearly reflect its net income derived from property located and business transacted in Kansas; the contention being that 79-3217 gave it the right to file and have accepted its income tax return based upon a direct or separate accounting method, thus segregating its Kansas income from its total income. Appellant forcefully contends this method "is the *only* method which clearly reflects its net income."

While appellant's separate accounting method may be entirely suitable and necessary for the conduct of its business and to record its interplant purchases, sales and expenses, the commission and the district court on appeal found this method to be impracticable as a means fairly calculated to allocate to Kansas that portion of net income reasonably attributable to appellant's business here. The contention presents the question of which has the right to determine

whether appellant's direct or separate accounting method is practicable and clearly reflects net income attributable to Kansas—the commission or the appellant? We resolve the question by answering: This duty is firmly fixed by our statutes (G. S. 1949, 74-2415, 74-2422, 79-3202, 79-3209, 79-3217, 79-3218, 79-3219) upon the Director of Revenue, subject always to the supervision and direction of the commission and to the requirement that the method adopted is fairly calculated to allocate to Kansas that portion of net income reasonably attributable to property owned and business transacted within this state.

The duty to administer and enforce the Kansas Income Tax Law is cast upon the Director of Revenue under the supervision and direction of the commission, and the legislature has given him full jurisdiction to accomplish this purpose. (G. S. 1949, 74-2415, 74-2422, 79-3209, 79-3219.) This is an administrative duty and not a judicial one. (*Montgomery Ward & Co. v. State Tax Comm.*, supra.) In carrying out this duty he must guard against being arbitrary or capricious, and where the provisions of the statute are clear, he must follow them. It is his duty to see that the proper method of allocation is justly and equitably applied but arithmetical accuracy is not generally possible in this difficult field. All methods of allocation, direct or separate accounting as well as the factor formula, contain estimates and, in varying degrees, are applied by the exercise of human judgment. If the method adopted accords with our statutes and regulations and produces an allocation approximately correct, although not meticulously precise, and is arrived at by the exercise of fair human judgment so that it reasonably attributes income allocable to property owned and business transacted within this state, it meets the test of being just and equitable. So long, therefore, as he acts within the scope and intent of the statutes and regulations, free from arbitrary, unreasonable or capricious action, his determination, subject to the supervision and direction of the commission, of questions arising out of the administration of this law, is final and conclusive and on appeal the only question for review is whether he so acted.

The authorities, we believe, preponderate in holding that the direct or separate accounting method may not be properly employed to determine the amount of income earned in a particular state where it was derived from a unitary business. Instead, the factor formula should be employed, thus giving weight to the dif-

ferent factors responsible for earning the income so as to apportion it from the entire business among the states in which it was earned. (Altman and Keesling, Allocation of Income in State Taxation, 1946, p. 100.) This is a recognized authority and in discussing the principles of allocation of business income states:

". . . Where the business within the state is truly separate and distinct from the business without the state this segregation can be made fairly, easily and accurately, and, accordingly, the separate accounting method may properly be used. Where, however, the business within the state is not a separate business but is an integral part of a unitary business carried on within and without the state, difficulties will be encountered both in the segregation of the gross income attributable to the state and in the segregation of the expenses attributable thereto. . . ." (p. 90.)

It concludes:

"For the above reasons it is an inescapable conclusion that the separate accounting method is wholly unsuited to the proper apportionment of the income of a unitary business. It is believed that the only proper method for making the apportionment is to employ a formula which gives weight to the various factors responsible for the earning of income, such as property, which reflects either the capital investment or the general size and importance of the business, payroll, which indicates the value to the taxpayer of the services of its employees, and sales, which give weight to the activity of the taxpayer in obtaining customers without which, of course, the business would not function." (p. 97.)

The question before the commission was one of law and of fact: Did appellant's income tax return clearly reflect net income attributable to Kansas? The order was that it did not; that because of appellant's unitary character its income allocable to Kansas must be determined by the factor formula method. The order of the commission is final unless it is unlawful, arbitrary or unreasonable. It is not contended by appellant that this order was not supported by sufficient evidence. In *Nutrena Mills, Inc., v. State Tax Comm.,* 150 Kan. 68, 91 P. 2d 15, it was said:

". . . Unless the ruling of the tax commission was in violation of law, or was induced by fraud, or for some other reason was arbitrary and capricious, the question of the reasonableness of the ruling was for the tax commission. In such a case the court would not be justified in substituting its judgment for that of the tax commission." (l. c. 71.)

In *Union Pac. Rld. Co. v. State Tax Comm.,* supra, Mr. Justice Thiele said:

"We prefer to give to section 27 (amended by G. S. 1949, 74-2426) pertaining to appeals an interpretation that will sustain and not destroy it, and

to hold that on appeal in such a case as is now before us the function of the district court is limited to determining whether the final order made by the tax commission operated unreasonably and arbitrarily in attributing to Kansas a percentage of total net income out of all appropriate proportion to the property located and business transacted within this state, and that on appeal the district court is without power to make an independent finding as to the amount of tax due or not due." (l. c. 729.)

Time and again this court has declared that it will not substitute its judgment for that of some administrative tribunal created by legislative authority for dealing with matters of nonjudicial character. (*Union Pac. Rld. Co. v. State Tax Comm.*, supra; *In re Morton Salt Co.*, 150 Kan. 650, 657, 95 P. 2d 335; *Montgomery Ward & Co. v. State Tax Comm.*, supra.)

The order of the commission carries with it a presumption of validity which continues until appellant establishes that the method of allocation adopted is inherently arbitrary, or that its application to appellant produces an unreasonable result. (*Nutrena Mills, Inc., v. State Tax Comm.*, supra, l. c. 75.) Appellant's burden in this respect is not satisfied by a mere showing that in its opinion its direct or separate accounting method more clearly reflected net income attributable to Kansas than any other method. The burden was upon appellant to show, not as is contended, that its method of separate accounting was "the *only* method which clearly reflects its net income," but, that the factor formula method ordered by the commission to be applied, does not "clearly reflect" a just and equitable allocation of net income to Kansas. This, it did not do.

Appellant argues that the order of the commission is unlawful, contending that it is based upon income tax regulation 94-4-86; that this regulation is unreasonable, arbitrary and capricious as applied to appellant's business since it is inconsistent with 79-3217, and the order is, therefore, ineffective and void. The pertinent portion of that regulation reads:

"SEGREGATED OR SEPARATE ACCOUNTING METHOD. This method is not considered as reflecting the correct taxable income in Kansas in the case of a company whose assets are distributed in several states but are united in a single special use as in the case of a telephone, telegraph, pipeline, bus or motor carrier, or railroad company. *This method is likewise not considered as reflecting the correct taxable income in Kansas in the case of a taxpayer engaged in the activities of manufacturing and selling products within and without the state.*

"In cases where products manufactured in Kansas are sold partly through a selling organization outside the state, and partly through the Kansas office, the separate or segregated accounting method will not be considered as correctly

*reflecting income taxable in Kansas, and income allocable to Kansas must be determined by a suitable formula.*

"In the use of separate accounting methods, separate records must be kept of sales, cost of sales and expenses for Kansas business as distinct from the remainder of the business. . . ." (Emphasis ours.)

The regulation was promulgated by the Director of Revenue (79-3236); approved by the commission (G. S. 1949, 74-2422); filed with the Revisor of Statutes (G. S. 1949, 77-410); and was in force and effect when this controversy arose.

We agree with appellant that if the regulation was applied so as to create an irrebuttable presumption that the direct or separate accounting methods of *all* individuals or corporations do not "clearly reflect" net income because they are engaged in business partly within and partly without the state, it would be an unreasonable, arbitrary and discriminatory application of the regulation and in conflict with 79-3217. Conceivably, there are many businesses within Kansas conducted partly within and partly without the state, truly separate and distinct from the out-of-state operation and are of such character that 79-3217 authorizes the use of a direct or separate accounting method of reporting net income. The arbitrary application of the regulation to such businesses would manifest unreasonableness and discrimination.

Obviously, 79-3217 has a field of operation when applied to a business conducted partly within and partly without this state. However, it was never intended to apply to a business having unitary character. The converse is true of regulation 94-4-86. While the regulation recognizes that a business may properly use the direct or separate accounting method, it appears on its face to prohibit the use of such method if the business is engaged in manufacturing or selling products within and without the state without first determining whether the business is unitary. In the absence of such a finding, the regulation may not be applied to such business. Any other application of the regulation would render it unlawful, unreasonable and arbitrary and in conflict with 79-3217. Here, the business was unitary and the regulation was properly applied. Appellant's argument that the regulation and the order of the commission were unlawful, unreasonable and arbitrary as aplied to its business operations, lacks merit.

Appellant lastly contends that the judgment of the district court sustaining the order of the commission applying the factor formula method of allocating its total net income to Kansas results in the

taxation of extra-territorial profits in violation of the commerce clause (Art. 1, § 8, Clause 3) and the equal protection clause (14th Amendment) of the Federal Constitution. Appellant had the burden of establishing that the application of the factor formula resulted in the taxing of income not derived from property owned or business transacted within this state. The contention is based upon the premise that its direct or separate accounting method is the only method which clearly reflects net income attributable to Kansas. This showing wholly fails to satisfy this burden.

It is well settled that states have the right of allocation by applying a percentage determined by statute or other formula to the entire income of a business in order to determine net income taxable in a state where the business is only partly carried on. (*Hans Rees' Sons v. No. Carolina,* 283 U. S. 123, 51 S. Ct. 385, 75 L. ed. 879; *Underwood T'writer Co. v. Chamberlain,* 254 U. S. 113, 41 S. Ct. 45, 65 ed. 165; *Adams Express Company v. Ohio,* 165 U. S. 194, 17 S. Ct. 305, 41 L. ed. 683; *Butler Bros. v. McColgan,* 315 U. S. 501, 62 S. Ct. 701, 86 L. ed. 991.)

The unitary character of a business is not the sole criterion of applying the factor formula method for allocating net income. (*Hans Rees' Sons v. No. Carolina,* supra.) The ultimate test, in addition to this business characteristic, is whether the order applying the formula and the assessment thereunder are inherently arbitrary, or their application to the taxpayer produces an unreasonable result. Appellant has failed to sustain this burden. The order of the commission referring the assessment back to the Director of Revenue to recompute appellant's tax pursuant to 79-3218 was proper. We find no error.

The judgment of the district court is affirmed.