No. 55,347

*In re:* DUE PROCESS HEARING OF KURT BAILEY, KENNETH E. and BARBARA BAILEY as natural parents and guardians for KURT E. BAILEY, a minor child, *Appellants*, v. UNIFIED SCHOOL DISTRICT No. 345, *Appellee.*

(664 P.2d 1379)

Opinion filed June 10, 1983.

*A. Rodman Johnson,* of Topeka, argued the cause and was on the brief for appellants.

*Robert D. Hecht,* of Scott, Quinlan & Hecht, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is a dispute between plaintiffs Kenneth E. and Barbara Bailey, parents of a handicapped child, Kurt E. Bailey, and defendant Unified School District No. 345 concerning the latter's determination the child's free appropriate public education is residential placement at the Kansas State School for the Visually Handicapped (K.S.S.V.H.). The parents demand Kurt continue his mainstream education in the local public school system.

The Baileys were provided a due process hearing pursuant to K.S.A. 72-972. The parties presented their evidence, and the hearing examiner upheld the school district's determination K.S.S.V.H. was an appropriate placement for the child. Pursuant to K.S.A. 1982 Supp. 72-974(*b*) the Baileys appealed the hearing examiner's decision to the State Board of Education. The State Board of Education reviewed the 700-page transcript and exhib-

its and held a review hearing wherein arguments of counsel were heard. The Board upheld the decision of the hearing examiner. The Baileys appealed the decision of the Board to the district court pursuant to K.S.A. 1982 Supp. 72-974(c). No additional evidence was submitted to the district court and, based on the record from the administrative proceeding, the district court upheld the decision of the Board, finding the same to be "supported adequately and fully" by the record. The Baileys appeal to this court from the district court decision.

Two issues are presented on appeal. The first relates to alleged district court error in excluding evidence and the second relates to whether the district court erred in finding there was substantial evidence to support the Board's decision.

The exclusion issue may be stated as follows. Did the district court err in refusing to admit additional evidence offered by the Baileys after the case had been submitted to the court for determination?

On January 3, 1983, the parties presented their oral arguments to the district court. Four days later, January 7, 1983, plaintiffs' attorney filed a motion to submit additional evidence which stated in pertinent part:

"Movant shows this Court:

"1) That certain evidence relevant to the resolution of the issues before the Court was not adduced at the due process hearing below;

"2) That the evidence is readily available and its submission is not made for the purposes of delay; and,

"3) Applicable federal law authorizes the taking of additional evidence by this Court at this stage of the proceeding."

The district court, in its Memorandum Decision filed on January 18, 1983, denied plaintiffs' motion. In so doing the court stated:

"Certain preliminary matters require initial determination. First, subsequent to the submission of this case for decision, counsel for appellant has moved this Court for an order permitting the introduction of additional evidence. No additional evidence was presented in the appeal before the State Board and no additional evidence was presented to this Court prior to the submission of this cause for decision. This Court's review is on the record, and further, the motion comes too late—the matter being now concluded."

The "applicable federal law" referred to in the Bailey motion is 20 U.S.C. § 1415(e)(2), a part of the Education for All Handicapped Children Act of 1975 (20 U.S.C. § 1401 *et seq.*) 20 U.S.C. § 1415(e)(2) provides:

"(2) Any party aggrieved by the findings and decision . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States . . . . In any action brought under this paragraph *the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party,* and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." (Emphasis supplied.)

The Baileys interpret 20 U.S.C. § 1415(e)(2) as *carte blanche* authority to submit additional evidence at any time before the decision by the district court. We do not agree.

The purpose of the "additional evidence" provision of 20 U.S.C. § 1415(e)(2) was discussed in *Anderson v. Thompson*, 495 F. Supp. 1256 (E.D. Wis. 1980), *aff'd* 658 F.2d 1205 (7th Cir. 1981). In *Anderson* there was a three-year interim between the administrative decision relative to the handicapped child's needs and the court hearing on the appeal therefrom. The school district argued the court should be limited to reviewing the record from the state administrative hearing. In rejecting the school district's contention, the United States District Court stated:

"[T]here would be little purpose served by freezing the evidence at the moment in time when the final state administrative decision was rendered. In view of the rate at which any child's needs may change, there would be little purpose served by a court proceeding which refused to take into account current evidence of the child's needs." 495 F. Supp. at 1261.

Continuing:

"Without considering such current evidence of the child's needs as the parties choose to offer, the court would be unable adequately to meet that responsibility [determination of whether suitable specialized education is provided]. Thus, in this case all of the evidence presented during the state administrative hearing and all of the evidence presented in this action during May and June 1980 will be considered as it bears upon [the child's] current needs and the suitability of a current educational placement and program for her." 495 F. Supp. at 1261.

We interpret the "additional evidence" provision of 20 U.S.C. § 1415(e)(2) as applying only to evidence offered at the time of the district court hearing. To require a court to consider evidence submitted at any time prior to decision could destroy orderly determination of the issues and final determination could be postponed indefinitely by a party who believed the decision might be unfavorable.

No proffer of evidence was made to the district court and no

reason has been espoused as to why the "additional evidence" could not have been introduced at the time of the hearing. Indeed, even on appeal we have no information as to the nature of such "additional evidence."

We find no error or abuse of discretion in the district court's refusal to permit the introduction of additional evidence after the hearing had concluded.

The second issue is whether there was substantial evidence to support the State Board of Education's decision. The parties have agreed the appropriate standard of review to be applied by the district court in this proceeding is the substantial evidence test.

In *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P.2d 828 (1968), 28 A.L.R.3d 472, this court enunciated a three-pronged test for judicial review of administrative actions.

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is *substantially supported by evidence,* and (3) the tribunal's action was within the scope of its authority." Syl. ¶ 1, (Emphasis supplied.)

"In reviewing a district court's judgment . . . this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court." Syl. ¶ 2.

Recently, in *Kansas Dept. of Health & Environment v. Banks,* 230 Kan. 169, 630 P.2d 1131 (1981), this court defined substantial evidence as:

"The deliberation of a reviewing court on application of the 'substantial evidence' test is analogous to that of a trial court which considers whether to take a case away from a jury by sustaining a motion for a directed verdict. 'Substantial evidence' has been defined as evidence which possesses both relevance and substance, and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion, *Jibben v. Post & Brown Well Service,* 199 Kan. 793, 433 P.2d 467 (1967)." 230 Kan. at 172.

See also Ryan, *Judicial Review of Administrative Action—Kansas Perspectives,* 19 Washburn L.J. 423, 430-31 (1980).

The portion of the district court's memorandum decision relative to this issue states:

"Turning to the remaining issue, the sufficiency of the evidence, the Court is mindful of its role in these proceedings. This appeal is in accordance with K.S.A.

60-2101(*d*). Under that statute, this Court is not free to make independent findings and conclusions nor is it free to review this cause de novo. The sole jurisdiction of this Court is to determine (1) whether the State Board acted arbitrarily, fraudulently or capriciously; (2) whether the State Board's order is substantially supported by competent evidence; and (3) whether the order of the Board was within the scope of its authority. In connection with points 1 and [3], no contentions are raised by appellant and no determination is necessary.

"Without unduly burdening this record, the Court has reviewed in detail the findings and conclusions of the hearing officer for the State Board, Ray D. Siehndel, dated November 24, 1982, and fully concurs therein. The record is replete with evidence adequate to support the careful findings of the capable hearing officer who undertook to resolve these rather difficult issues in the first instance.

"Although this Court is sympathetic with the parents in this cause who undoubtedly desire that their child remain at home for his education, the fact remains that those most knowledgeable in these subjects conclude his best opportunities lie elsewhere. Although there is difference of opinion on this point contained in the record, the function of this Court is not to weigh evidence but to determine only if all conclusions reached are supported by it. There can be no doubt that such conclusions are supported adequately and fully  .  .  .  ."

The only challenge before us as to the sufficiency of the evidence relates to the ultimate determination by the school district that residential placement at the Kansas State School for the Visually Handicapped (K.S.S.V.H.) is an appropriate educational program for Kurt.

Kansas is a participating state in the federal Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1401 *et seq.* As such, Kansas is required by 20 U.S.C. § 1412(5) to establish:

"[P]rocedures to assure that, to the maximum extent appropriate, handicapped children, including children in public or private institutions or other care facilities, are educated with children who are not handicapped, and that special classes, separate schooling, or other removal of handicapped children from the regular educational environment occurs only when the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily  .  .  .  ."

See also 34 C.F.R. § 300.550 (1982).

To assure compliance with the federal act, a participating state must have a "state plan" submitted to and approved by the United States Secretary of Education (formerly Commissioner of Education), which demonstrates the State "has in effect a policy that assures all handicapped children the right to a free appropriate public education" (20 U.S.C. §§ 1412[1] and 1413). For an excellent discussion of the history, purposes, requirements and operation of the Education for All Handicapped Children Act of

1975, see *Hendrick Hudson Dist. Bd. of Ed. v. Rowley,* 458 U.S. 176, 73 L.Ed.2d 690, 102 S.Ct. 3034 (1982). For our purposes herein, it is sufficient to say Kansas has an approved state plan which establishes the same "mainstream" preference enunciated by 20 U.S.C. § 1412(5). See Menninger & Dittmeier, *The Law and Handicapped Persons: Achieving Equality Through New Rights,* 47 J.K.B.A. 181, 182-83 (1978).

We turn now to the record in this case. Kurt Bailey was born June 6, 1966, visually impaired. His mother, Barbara Bailey, and his sister are also visually impaired. Kurt's father, Kenneth E. Bailey, is the only normal sighted family member. Tragically, Kurt's vision has deteriorated throughout his childhood. At this point Kurt is considered legally blind and his medical prognosis is total blindness within a few years. There is no medical treatment which can improve his vision. Kurt also suffers from hearing disabilities and emotional difficulties, the latter arising primarily by virtue of the inability of Kurt and his family to accept and cope with the child's blindness. Kurt has normal intellectual ability.

Defendant school district has worked with Kurt and his family for over ten years. In addition to special education, the school district has provided Kurt and his family counseling services with the Menninger Foundation. The school district has frequently consulted with experts from K.S.S.V.H. as to how best to tailor a program suited to Kurt's very special needs. The boy's multiple handicaps, coupled with normal intellect, make his needs unique in the district. Kurt was "mainstreamed" in regular classes during his junior high school years and the district supplied many special services to him including a qualified teacher to sit with him in the regular classes and provide assistance. The school district also arranged for Kurt to obtain special mobility training at the State Rehabilitation Center for the Blind, a program he would normally have been ineligible for due to his youth. One of the experts testifying for the school board aptly described the school district's efforts to assist Kurt as "herculean."

The school district evaluated Kurt's needs in consultation with various outside experts in the field and finally concluded enrollment in a regular high school would not be an appropriate education program for Kurt after completion of junior high,

Various factors were considered such as: (1) the open setting of the high school with attendant higher noise levels which would increase his difficulty of hearing what was said in class; (2) increased mobility problems inherent in attending classes in the high school; (3) the diversity of subjects offered in the high school which would greatly complicate assignment of qualified teachers to sit with him in each class and provide special assistance (the total cost of mainstreaming him in high school was estimated at $187,000 per year); and (4) Kurt's major deficiencies in self-help and social skills including the absence of peer friends. The evidence showed Kurt had advanced academically considerably beyond his ability to function as a reasonably self-sufficient human being. Major deficiencies lie in various aspects of the important business of living. Unfortunately, his family has been unable or unwilling to assist Kurt in maturing and learning to live with his handicaps. The resultant emotional problems surface in the exhibition of considerable inappropriate behavior in school.

Kurt's parents are adamant he should continue to be mainstreamed in the local public school system and presented evidence he could receive some benefit from the public schools.

The district court concluded the state board's affirmance of the hearing examiner's ruling in favor of the school district's recommended K.S.S.V.H. placement was "supported adequately and fully" by the evidence contained in the record. We agree. If Kurt is to grow and mature, certainly he must receive academic training. Perhaps even more importantly, Kurt must be assisted in accepting his blindness and must learn the self-help skills necessary to function. K.S.S.V.H. has the setting, the program and the experienced staff to assist Kurt in all facets of his special needs and clearly is an appropriate educational placement within the purview of the applicable state and federal laws.

We conclude the district court did not err in finding the decision of the State Board of Education was supported by substantial competent evidence.

We have disposed of all issues raised by the appellants. However, there is one matter which was not raised by the parties which causes the court some concern. The parties have agreed the appeal from the State Board of Education was pursuant to K.S.A. 1982 Supp. 72-974(c) which is a part of the Special

Education for Exceptional Children Act, K.S.A. 72-961 *et seq.*
K.S.A. 1982 Supp. 72-974(c) provides:

"(c) Any party to a hearing provided for by the state board may appeal the decision to the district court in the manner provided by K.S.A. 1982 Supp. 60-2101, and amendments or supplements thereto."

K.S.A. 1982 Supp. 60-2101 referred to in K.S.A. 1982 Supp. 72-974(c) is the general administrative review statute and therefore, absent any other considerations, the *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, three-pronged test for judicial review would be applicable to appeals thereunder— including the substantial evidence test. Throughout these proceedings the parties have concurred the applicable test on judicial review herein is the substantial evidence test.

However, the first issue in this appeal relates wholly to a provision of federal Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1401 *et seq.* while the second issue relies on the federal act in part. 20 U.S.C. § 1415(e)(2) is reiterated in pertinent part as follows:

"(2) Any party aggrieved by the findings and decision . . . shall have the right to bring a civil action . . . pursuant to this section . . . in any State court of competent jurisdiction or in a district court of the United States . . . . In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the *preponderance of the evidence*, shall grant such relief as the court determines is appropriate." (Emphasis supplied.)

While noting the correct standard for civil actions under 20 U.S.C. § 1415(e)(2) is preponderance of the evidence, the United States Supreme Court in *Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. 176, has held this does not mean a court may substitute its judgment for that of the state educational agency. In construing 20 U.S.C. § 1415(e)(2), the court, through Justice Rehnquist, observed:

"Thus the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review. The very importance which Congress has attached to compliance with certain procedures in the preparation of an IEP [individualized educational program, see 20 U.S.C. § 1401(19)] would be frustrated if a court were permitted simply to set state decisions at nought. The fact that § 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be

given to these proceedings. And we find nothing in the Act to suggest that merely because Congress was rather sketchy in establishing substantive requirements, as opposed to procedural requirements for the preparation of an IEP, it intended that reviewing courts should have a free hand to impose substantive standards of review which cannot be derived from the Act itself. In short, the statutory authorization to grant 'such relief as the court determines is appropriate' cannot be read without reference to the obligations, largely procedural in nature, which are imposed upon recipient States by Congress." 458 U.S. _____, 73 L.Ed.2d at 712.

In *Town of Burlington v. Department of Ed., Etc.*, 655 F.2d 428 (1st Cir. 1981), a United States District Court was called upon to pass on a state department of education's determination holding plaintiff should reimburse a parent for the cost of special education for a handicapped child. Operating under Education for All Handicapped Children Act, 20 U.S.C. § 1401 *et seq.*, the district court held, under the state law substantial evidence standard, the actions of the state education department should be affirmed. On appeal the First Circuit Court of Appeals vacated and remanded, holding, as the case was being determined under the federal law, the correct standard of judicial review of an administrative action concerning a handicapped child's education was preponderance of the evidence. In so holding, the court declared:

"We hold that the district court erred in granting summary judgment for the defendants under state law because we conclude that *state law cannot be applied when review under federal law is sought.* By its terms 20 U.S.C. § 1415(e)(1) provide that decisions by the state educational agency 'shall be final, except that any party' has judicial appeal rights under 20 U.S.C. § 1415(e)(2). That subsection provides for review in state or federal court. It also sets forth the procedure and standards for this review: 'In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.' *Id.*

"This federal specification for review, *when invoked,* seems to us designed to occupy the field over an inconsistent state provision.[4] Here the arguably appli-.cable state review provision—part of the state's general administrative procedure legislation—calls for, *inter alia,* judicial review governed by the substantial evidence standard. Mass. Gen. Laws Ann. ch. 30A, § 14. *This standard does conflict with the federal standard;* we can imagine many judicial reviews that would uphold an agency decision as based on substantial evidence but that would reach a different result were new evidence to be taken and judged under the more rigorous 'preponderance of the evidence' standard." 655 F.2d at 431. (Emphasis supplied.)

Footnote 4 in the preceding *Burlington* quote is interesting. It states:

"We need not decide whether the federal review provision would have preemptive force when the only aggrieved party seeks relief *solely* under state law since here the Town *has* invoked 20 U.S.C. § 1415. It is possible that an aggrieved party might for financial or other reasons be satisfied with the more limited judical review available under state law; conceivably the federal policy embodied in § 1415 would not be infringed when willingly waived by its beneficiary." 655 F.2d at 431 n. 4.

The first issue in this appeal was concerned exclusively with the additional evidence provision of 20 U.S.C. § 1415(e)(2). The preponderance of the evidence provision is contained in the same sentence of 20 U.S.C. § 1415(e)(2). Accordingly, the parties must have been aware of its existence but proceeded under state law.

The preponderance of the evidence test, of necessity, involves weighing of the evidence—which the trial court did not do in this case. However, the evidence before the trial court consisted wholly of the record from the administrative proceedings. Under such circumstances, this court is on an equal footing with the district court in applying the preponderance of the evidence test. We have carefully reviewed the record and conclude under either the substantial evidence test or preponderance of the evidence test the decision of the State Board of Education should be upheld.

The judgment of the district court is affirmed.