No. 56,237

PIONEER CONTAINER CORPORATION, *Appellant*, v. MARK BESHEARS, Director of Taxation of the State of Kansas, *Appellee*.

(684 P.2d 396)

Opinion filed June 8, 1984.

*Conrad Miller, Jr.,* of McDowell, Rice & Smith, Chartered, of Kansas City, argued the cause and *Charles F. Speer,* of the same firm, was with him on the briefs for appellant.

*David Prager, III,* attorney, Kansas Department of Revenue, argued the cause and *William L. Edds,* general counsel, Kansas Department of Revenue, was with him on the briefs for appellee.

*James D. Dye,* of Bever, Dye, Mustard & Belin, of Wichita, was on the brief of *amicus curiae* for that firm.

The opinion of the court was delivered by

McFARLAND, J.: This is an appeal by plaintiff Pioneer Container Corporation (a Missouri corporation) from a judgment of the district court which affirmed an order of the Kansas Board of Tax Appeals finding plaintiff corporation and its wholly owned subsidiary, Pioneer Bag Company (a Kansas corporation, now defunct), constituted a unitary business and requiring a combined report method for allocation of income and expenses for state corporate income tax purposes.

For its first issue plaintiff contends the district court applied an improper standard of review.

In *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 436 P.2d 828 (1968), 28 A.L.R.3d 472, this court enunciated the standard rules for judicial review of administrative actions. In *Foote* this court declared a district court could not, on appeal, substitute its judgment for that of an administrative tribunal but was restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order was substantially supported by evidence, and (3) the tribunal's actions were within the scope of its authority. 200 Kan. 447, Syl. ¶ 1. See also *In re Due Process Hearing of Bailey,* 233 Kan. 714, 717, 664 P.2d 1379 (1983); *Hemry v. State Board of Pharmacy,* 232 Kan. 83, 86, 652 P.2d 670 (1982); *Boswell, Inc. d/b/a Broadacres v. Harkins,* 230 Kan. 738, 740, 640 P.2d 1208 (1982); *Kansas Dept. of Health & Environment v. Banks,* 230 Kan. 169, 171-72, 630 P.2d 1131 (1981); *U.S.D. No. 461 v. Dice,* 228 Kan. 40, 50, 612 P.2d 1203 (1980); *Brinson v. School District,* 223 Kan. 465, 469, 576 P.2d 602 (1978); *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.,* 217 Kan. 546, 539 P.2d 1 (1975). In reviewing a district court's judgment on an administrative action, Kansas appellate courts must first determine whether the district court observed the requirements and restrictions placed upon it and then make the same review of the administrative tribunal's action as did the district court. *Kansas Dept. of Health & Environment v. Banks,* 230 Kan. 169, Syl. ¶ 2; *U.S.D. No. 461 v. Dice,* 228 Kan. 40, Syl. ¶ 4; *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.,* 217

Kan. 546, Syl. ¶ 4; *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, Syl. ¶ 2.

The district court herein utilized the *Foote* rules for judicial review of administrative actions. Plaintiff contends the *Foote* rules were inapplicable herein by virtue of the matter having been submitted to the Board of Tax Appeals upon a stipulation of facts. This contention is fatally flawed. The case was *not* submitted to the Board of Tax Appeals on stipulated facts. Rather, the parties agreed the Board should use the *record* made at the hearing before the Director of Taxation in lieu of a de novo hearing. The testimony on the record was not consistent and, indeed, was conflicting in a number of respects. We conclude this issue is wholly lacking in merit.

For its second issue plaintiff contends the Board of Tax Appeals erroneously found that plaintiff and its subsidiary, Pioneer Bag Company, constituted a unitary business.

In tax law the concept of unitary business arises when a corporation has one or more subsidiaries or divisions which are dependent to or upon, or contribute to the parent corporation or other subsidiaries or divisions so, in essence, to constitute a homogenous enterprise. When such an entity exists it may be described as a unitary business and in determining the tax liability of the given subsidiary or division the taxing authority may consider the entire income of the unitary business and apportion taxes on the basis of the income attributable within the jurisdiction.

As defined by the Illinois Supreme Court:

"A unitary business operation is one in which there is a high degree of interrelationship and interdependence between, typically, one corporation, which generally is a parent corporation, and its corporate subsidiaries or otherwise associated corporations, which group is usually engaged in multistate, and in some cases in international, business operations. Because of this integrated relationship, which is reflected in all phases of the business operations, it is extremely difficult, for purposes of taxation, to determine accurately the measure of taxable income generated within a State by an individual corporation of the unitary group which is conducting business in the State. Typically, the corporation's transactions and the income derived from them actually represent the business efforts of the individual corporation, plus efforts of other and possibly all members of the unitary business operation. As a result, the claimed income of each member of the group standing alone does not, in a real sense, reflect the conducting of a unitary business operation because the income is not attributable solely to the effort of the particular corporation." *Caterpillar Tractor Co. v. Lenckos,* 84 Ill. 2d 102, 108, 417 N.E.2d 1343 (1981).

See also *PMD Investment Co. v. State*, 216 Neb. 553, 345 N.W.2d 815 (1984).

In *Crawford Manufacturing Co. v. State Comm. of Revenue and Taxation*, 180 Kan. 352, 304 P.2d 504 (1956), this court held:

"A multi-state business is a unitary business for income tax purposes when the operations conducted in one state benefit and are benefited by the operations conducted in another state or states. If its various parts are interdependent and of mutual benefit so as to form one integral business rather than several business entities, it is unitary." Syl. ¶ 1.

"Whether a multi-state business is separate or unitary depends upon the manner in which its business is conducted. *The essential test to be applied is whether or not the operation of the portion of the business within the state is dependent upon or contributory to the operation of the business outside the state. If there is such relationship, the business is unitary.*" Syl. ¶ 2.

"Various portions of a business may be carried on exclusively in different states without destroying its unitary character if the integral parts are of mutual benefit to one another." Syl. ¶ 3. (Emphasis supplied.)

See also *Webb Resources v. McCoy*, 194 Kan. 758, 401 P.2d 879 (1965).

We turn now to the facts of this case.

The Board of Tax Appeals made the following findings:

"[P]rior to the formation of Pioneer Bag all of the assets and property used to form the company were owned by Pioneer Container Corporation, a Missouri corporation (hereafter referred to as Pioneer Container). Pioneer Bag was incorporated for the express purpose of selling off the burlap bag division to a third party. The sale was never consumated and Mr. William Gore was hired by Pioneer Container as general manager to operate Pioneer Bag. During the tax years at issue (February 26, 1978 through February 24, 1980) Mr. Gore operated the plant, manufacturing burlap bags and made sales of burlap bags and paper bags (the latter being manufactured by Pioneer Container). A salesman for Pioneer Container sold burlap bags, as well as paper bags, which were manufactured by Pioneer Bag.

"Pioneer Container paid the bills of Pioneer Bag from co-mingled funds. The funds of the two companies were kept in one bank account at Commerce Bank at Kansas City. With the exception of the payroll account for Pioneer Bag, the funds received on sales by Pioneer Bag were never separated from the funds of Pioneer Container. Only one cash receipt book was kept for both companies, and this was kept by Pioneer Container. The separation of the receipts was reflected only by bookkeeping transactions. An executive of Pioneer Container signed all of the checks for each company. Mr. Gore, who managed Pioneer Bag, was not authorized to sign checks. The operating status of Pioneer Bag was never known until the annual tax returns were prepared. Pioneer Container paid all of the debts of Pioneer Bag regardless of the profit or loss status.

"Both companies were in the bag business, manufacturing burlap, cotton and

paper bags primarily for the agriculture industry. The Boards of Director[s] were interlocking. Control of Pioneer Bag was in Pioneer Container, which owned 100 percent of the stock of Pioneer Bag.

"There were mutual benefits to each company from the other. The expertise of the executive staff of Pioneer Container, such as accounting services, financing, business experience and operational expertise, were furnished to Pioneer Bag. The availability of Mr. Gore to sell paper bags for Pioneer Container to customers he called on and the same benefit to Pioneer Bag for sales to customers of Pioneer Container by its salesmen was of benefit, one to the other.

"The two companies were operated as one out of the offices of Pioneer Container in Missouri. Pioneer Bag was dependent upon Container for accounting services, management expertise and financing. Without these services Pioneer Bag could not operate."

The Board's findings are supported by substantial competent evidence.

The Board, based upon these findings, then concluded:

"The Board therefore concludes that the two companies are operating a unitary business. The definition of a unitary business was set out by the Kansas Supreme Court in *Crawford Manufacturing Co. v. State Comm. of Revenue and Taxation,* 180 Kan. 352, 304 P.2d 504 (1956). At syllabus numbers 1 and 2 it states the following:

" 'A multistate business is a unitary business for income tax purposes when the operations conducted in one state benefit and are benefited by the operations conducted in another state or states . . . . The essential test to be applied is whether or not the operation of the portion of the business within the state is dependent upon or contributory to the operation of the business outside the state. If there is such a relationship, the business is unitary.'

"In the *Crawford* case the facts were similar to [the] case here being reviewed. The company headquarters kept the books for all the manufacturing plants in other states; fiscal policies were planned and carried out at the home office; and central purchasing was done by the home office. The Court stated that the operation of the central purchasing division alone demonstrates clearly that Crawford's home office and its three manufacturing plants stand in the relationship of reflected dependency, mutual contribution and mutual benefits.

"In the area of persuasive authority, the Board examines *Container Corp. of America v. Franchise Tax Bd.,* 117 Cal. App. 3d 988, 173 Cal. Rptr. 121 (1981) [, aff'd ____ U.S. ____, 77 L.Ed.2d 545, *reh. denied* ____ U.S. ____, 78 L.Ed.2d 248 (1983),] where the California Court enunciated three factors a court must consider in determining whether a business is unitary. They are: unity of ownership; unity of operations as evidenced by central purchasing, accounting and management; and, unity of use in its centralized executive force and general system of operation. All of these tests have been met in the instant case.

"The Board therefore finds that Pioneer Bag and Pioneer Container were engaged in a unitary business during the period of time under appeal in the case herein."

We find no error in the Board's conclusion the corporations

herein were engaged in a unitary business. In fact, the findings herein portray virtually a textbook example of a unitary business operation.

For its third issue plaintiff contends the Board of Tax Appeals erred in affirming the Director of Taxation's determination he had authority to require Pioneer Container Corporation and Pioneer Bag Company to submit their income tax returns on the basis of a combined reporting method.

After having found the two corporations herein were engaged in a unitary business the Board of Tax Appeals determined:

"The Board further finds that Kansas has the authority pursuant to K.S.A. 79-32,141 to require the combined report method of allocation of income and expenses, when it is found that two or more corporations are engaged in a multistate or multinational unitary business.

. . . .

"The Board . . . concludes that a combined report method of allocation and apportionment of income and expenses is authorized by Kansas law."

The Board then concluded the method of allocation and apportionment utilized herein had not been applied in an unconstitutional manner. This latter determination has not been appealed and, accordingly, is not before us.

In affirming the Board of Tax Appeals, the district court held:

"K.S.A. 79-32,141 authorizes the utilization of the combined report method of allocation of income and expenses when it is determined that two or more corporations are engaged in a multistate unitary business. Therefore the Board correctly concluded that a combined report method of allocation and apportionment of income and expenses is authorized by Kansas law."

Before proceeding to a discussion of what the "combined report method" of allocation of income and expenses is and is not, it is appropriate to summarize the general scheme of Kansas taxation relative to taxpayers having income from business activity which is taxable both within and without the state. In 1963 Kansas adopted the Uniform Division of Income for Tax Purposes Act (UDITPA), K.S.A. 79-3271 *et seq.*, L. 1963, ch. 485. The basic structure and purpose of the Uniform Act were summarized in *Amoco Production Co. v. Armold, Director of Taxation*, 213 Kan. 636, 518 P.2d 453 (1974), as follows:

"The Uniform Act was approved by the National Conference of Commissioners on Uniform State Laws and by the House of Delegates of the American Bar Association in 1957 (Vol. 7 Uniform Laws Annotated, p. 365). Professor William J. Pierce, of the University of Michigan Law School, a member of the National

Conference, was the draftsman. In a treatise analyzing the provisions of the Act appearing in Vol. 35, 'TAXES' The Tax Magazine (October 1957), commencing at page 747, Professor Pierce states that its basic purpose should be the simplification of computing state taxes and that, 'the Act, if adopted in every state having a net income tax or a tax measured by net income, would assure that 100 percent of income, and no more or no less would be taxed.' The Uniform Act was first adopted by Alaska in 1960, followed by Arkansas in 1961, and Kansas in 1963. At the time this action was tried it had been adopted in substantially its original form in twenty-three states.

"K.S.A. 79-3272 of the Uniform Act mandates that any taxpayer (with certain exceptions not pertinent herein) having income from business activity taxable both within and without this state shall allocate and apportion his net income as provided in the Act.

"The 'three-factor' formula is set out in K.S.A. 79-3279 which reads:

" 'All business income shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three.'

"The three factors are defined in the following section of the Act. K.S.A. 79-3280 defines the property factor in this fashion:

" 'The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used in this state during the tax period and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned or rented and used during the tax period.'

"K.S.A. 79-3281 and 79-3283 prescribe rules for the valuation of owned and rented property and the averaging of the values thereof.

"The 'payroll factor' is defined in K.S.A. 79-3283:

" 'The payroll factor is a fraction, the numerator of which is the total amount paid in this state during the tax period by the taxpayer for compensation, and the denominator of which is the total compensation paid everywhere during the tax period.'

"The 'sale factor' is defined in K.S.A. 79-3285:

" 'The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period.'

"The provisions of the Uniform Act most critical to this litigation appear in K.S.A. 1973 Supp. 79-3288 which read in pertinent part:

" 'If the allocation and apportionment provisions of this act do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the secretary of revenue may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

" '(a) Separate accounting;

" '(b) the exclusion of any one or more of the factors;

" '(c) the inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

" '(d) the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income; or  . . .'

"This section of the Act is frequently referred to as the 'relief' provision (Vol.

1972 Utah Law Review, p. 607; and Vol. 15 University of California Los Angeles Law Review [1967], [Keesling and Warren], Corporate Taxation, pp. 156, *171*)." 213 Kan. at 639-41.

At issue in *Amoco* was the propriety of the Director of Taxation's assessment of Amoco on the basis of separate accounting pursuant to K.S.A. 79-3288(*a*) rather than apportionment of income under the three-factor formula. In *Amoco* this court recognized allocation and apportionment under the three-factor formula is the general rule of UDITPA and the alternative methods under the "relief" provision (K.S.A. 79-3288) are the exceptions.

Presently twenty-five states have adopted UDITPA with another eleven having enacted substantially similar legislation. 7A U.L.A. 13 (1984 Supp.); Am. Jur. 2d Desk Book, p. 225 (1983 Supp.).

A good summary of the cases decided under UDITPA is found at Annot., Construction and Application of Uniform Division of Income for Tax Purposes Act, 8 A.L.R.4th 934. See also Comment, *State and Local Taxation: Challenges to the Apportionment of Corporate Income*, 20 Washburn L.J. 679 (1981); Comment, *Taxation: The Uniform Division of Income for Tax Purposes Act*, 14 Washburn L.J. 415 (1975).

Nowhere in UDITPA is there any reference to "combined reporting" or the "combined report method." In *Caterpillar Tractor Co. v. Dept. of Rev.*, 289 Or. 895, 618 P.2d 1261 (1980), the Oregon Supreme Court succinctly distinguished combined and consolidated returns.

"A *combined report* is an *accounting* method whereby each member of a group carrying on a unitary business computes its individual taxable income by taking a portion of the combined net income of the group. A *consolidated return* is a *taxing* method whereby two corporations are treated as one taxpayer." 289 Or. at 898.

To contrast more fully "combined reporting" from a "consolidated return," reference should be made to the Kansas tax statute relative to the filing of consolidated returns (K.S.A. 79-32,142) which provides:

"(*a*) In the event two or more corporations file federal income tax returns on a consolidated basis, and in the event that all of such corporations derive all of their income from sources within Kansas, then, and in such events, such corporations shall file consolidated returns for purposes of determining their Kansas income tax liability the same as if such corporations were one corporation.

"(b) The director may permit or require any group of affiliated corporations to file consolidated returns under regulations to be promulgated by the director where the director determines, that the filing of such consolidated returns is necessary to clearly reflect the Kansas taxable income of the affiliated group. For purposes hereof, any affiliated group means any group of corporations permitted to file a consolidated return for federal income tax purposes."

The above quoted version was in force for the tax years (1978 through 1980) here in question. In 1980 the Kansas Legislature amended K.S.A. 79-32,142 by adding "and expenses" after the phrase "of such corporations derive all of their income" in subsection (a). L. 1980, ch. 316, § 14. See K.S.A. 1983 Supp. 79-32,142. See also K.A.R. 1983 Supp. 92-12-52 and K.A.R. 92-12-52 (1978).

A combined report is not the same as a consolidated return and does not in any way result in the taxing of one corporation on or measured by the income of another. Actually, the combined report is not a tax return, but, rather, is in the nature of an information return. Notwithstanding its use, each corporation doing business in the taxing state is taxed on or measured by only its own income from sources within the state. However, if the corporation doing business in the state is a member of an affiliated group conducting a business within and without the state, then instead of computing the income attributable to the state on the basis of the corporation's books of account (which may reflect the operation of only a small segment of the business), the apportionment is made with reference to the income from the entire business just as would be done if the business had been conducted by one entity. Keesling, *A Current Look at the Combined Report and Uniformity in Allocation Practices,* 42 J. Tax'n 106, 109 (1975). See also *Caterpillar Tractor Co. v. Dept. of Rev.,* 289 Or. at 899.

Courts in a number of states which have adopted UDITPA have been confronted with the question of whether the failure of the Uniform Act specifically to allow combined reporting or unitary apportionment means its application is not authorized. In *Caterpillar Tractor Co. v. Lenckos,* 84 Ill. 2d 102, 417 N.E.2d 1343 (1981), the Illinois Supreme Court held:

"Considering whether UDITPA authorizes the use of unitary apportionment, we first observe that UDITPA does not make any reference to unitary apportionment or combined reporting. *The absence of specific reference to the unitary method is not, however, critical, for in a number of jurisdictions that adopted*

*UDITPA and in some of them, the MTC [Multi-State Tax Compact] as well, courts have held that unitary apportionment or combined reporting was authorized though the particular income tax statute made no reference to this method of reporting.* In *Coca Cola Co. v. Department of Revenue* (1975), 271 Or. 517, 533 P.2d 788, the Oregon Department of Revenue applied a unitary or combined apportionment method of accounting to the income tax returns of the plaintiff corporation and its wholly owned subsidiaries, which had filed separate returns using Oregon's three-factor apportionment formula, which is similar to that set out in the Illinois statute. The Department argued that the combined method, though not specifically provided for in the tax statutes into which UDITPA had been incorporated, would more accurately reflect the income of what it contended was a unitary business operation. Concluding that the company's syrup and bottling operations were so inextricably connected as to constitute a unitary business, the court stated: '*The combined method of apportionment reporting is wholly consistent with, and a natural extension of, the apportionment method.*' (271 Or. 517, 528, 533 P.2d 788, 793.) The court held that the plaintiff and its subsidiaries 'are all part of the same unitary operation and were required to use the combined method of reporting for the tax years in question.' 271 Or. 517, 529, 533 P.2d 788, 794. See also *American Smelting & Refining Co. v. Idaho State Tax Com.* (1979), 99 Idaho 924, 592 P.2d 39; *Montana Department of Revenue v. American Smelting & Refining Co.* (1977), 173 Mont. 316, 567 P.2d 901.

"The Supreme Court has also held that the absence of any statutory reference to the unitary method of reporting does not forbid its use. In *Butler Brothers v. McColgan* (1942), 315 U.S. 501, 86 L.Ed. 991, 62 S.Ct. 701, the plaintiff, an Illinois corporation conducting a wholesale goods and general merchandise business, was licensed to conduct business in California. The company had wholesale distributing divisions located in seven states, including California, each serving a district area and each controlling its own sales force, accounting procedures, sales operations and credit and financing procedures as well. Though the California tax statute did not specifically authorize the combined method of reporting or make any references to unitary operations, the court upheld the State's decision to apply the unitary method to the combined income derived from the operations of the seven divisions. In its holding the court stated that 'this Court has recognized that unity of the use and management of a business which is scattered through several states may be considered when a State attempts to impose a tax on an apportionment basis. As stated in *Hans Rees' Sons, Inc. v. North Carolina,* [283 U.S. 123, 133, 75 L.Ed. 879, 905, 51 S.Ct. 385, 389 (1931)], "the enterprise of a corporation which manufactures and sells its manufactured product is ordinarily a unitary business, and all the factors in that enterprise are essential to the realization of profits." ' 315 U.S. 501, 508, 86 L.Ed. 991, 996, 62 S.Ct. 701, 704-05.

"In a later case, *Northwestern States Portland Cement Co. v. Minnesota* (1959), 358 U.S. 450, 3 L.Ed.2d 421, 79 S.Ct. 357, the court addressed a similar challenge to the use of a unitary apportionment method, and in citing *Hans Rees'* and other apportionment decisions (*e.g., Bass, Ratcliff & Gretton, Ltd. v. State Tax Com.* (1924), 266 U.S. 271, 69 L.Ed. 282, 45 S.Ct. 82; *Underwood Typewriter Co. v. Chamberlain* (1920), 254 U.S. 113, 65 L.Ed. 165, 41 S.Ct. 45) the court upheld the use declaring; 'These cases stand for the doctrine that the entire net

income of a corporation, generated by interstate as well as intrastate activities, may be fairly apportioned among the States for tax purposes by formulas utilizing in-state aspects of interstate affairs.' 358 U.S. 450, 460, 3 L.Ed.2d 421, 428, 79 S.Ct. 357, 363. See also *Exxon Corp. v. Wisconsin Department of Revenue* (1980), 447 U.S. 207, 65 L.Ed.2d 66, 100 S.Ct. 2109; *Mobil Oil Corp. v. Commissioner of Taxes* (1980), 445 U.S. 425, 65 L.Ed.2d 510, 100 S.Ct. 1223." 84 Ill. 2d 118-20. (Emphasis supplied.)

The Illinois rationale set forth in *Caterpillar* was recently approved by the Nebraska Supreme Court in *PMD Investment Co. v. State*, 216 Neb. 553, 345 N.W.2d 815 (1984).

K.S.A. 79-32,141 provides:

"*The director may allocate* gross income, deductions, credits, or allowances *between two or more organizations,* trades or businesses (whether or not incorporated, or organized in the United States or affiliated) owned or controlled directly or indirectly by the same interests, *if the director determines such allocation is necessary to prevent evasion of taxes or to clearly reflect income of the organizations, trades or businesses."* (Emphasis supplied.)

K.S.A. 79-3292 declares Kansas' version of the Uniform Act shall be and constitute a part of and shall be supplemental to the Kansas income tax act.

*Joslin Dry Goods v. Dolan,* 200 Colo. 291, 615 P.2d 16 (1980), involves Colorado statutes very similar to K.S.A. 79-32,141 and -3288. Joslin was a Colorado corporation, wholly owned by a Delaware corporation which was engaged in the retail department store business throughout the United States. During the tax year in question Joslin filed its Colorado corporate income tax return using a separate accounting method. The state director of revenue determined the Delaware parent corporation and its wholly-owned Colorado subsidiary constituted a unitary operation and therefore, under the three-factor formula (see K.S.A. 79-3279), Joslin should present its income tax return on a combined method. One of the contentions before the Colorado Supreme Court was that while the state's taxing statutes, like Kansas', made explicit reference to consolidated returns (see K.S.A. 79-32,142; -3288[e]; also K.A.R. 92-12-52 [1978]), as the statutes did not mention combined reporting, such method was impermissible. The Colorado Supreme Court reviewed cases from numerous jurisdictions then succinctly observed:

"The law in other jurisdictions which have addressed this issue is clear—*the power of the taxing authority to require a combined report is independent of the power to require a consolidated return."* 200 Colo. at 295. (Emphasis supplied.)

The United States Supreme Court has also addressed the power of a state to tax a unitary enterprise which is engaged in multi-state and even multi-national operations. See Comment, *State and Local Taxation: Challenges to the Apportionment of Corporate Income*, 20 Washburn L.J. 679 (1981), for a good review of the high court's opinions in this area. In *Container Corporation of America v. Franchise Tax Bd.,* _____ U.S. _____, 77 L.Ed.2d 545, 103 S.Ct. 2933, *reh. denied* _____ U.S. _____, 78 L.Ed.2d 248 (1983), the United States Supreme Court again approved, in general, the three-factor income allocation formula set forth in UDITPA. As to its application to a particular unitary business, the high court stated:

"The first, and again obvious, component of fairness in an apportionment formula is what might be called internal consistency—that is the formula must be such that, if applied by every jurisdiction, it would result in no more than all of the unitary business's income being taxed. The second and more difficult requirement is what might be called external consistency—the factor or factors used in the apportionment formula must actually reflect a reasonable sense of how income is generated. The Constitution does not 'invalidat[e] an apportionment formula whenever it *may* result in taxation of some income that did not have its source in the taxing State.'" _____ U.S. at _____, 77 L.Ed.2d at 556.

Continuing:

"[W]e will strike down the application of an apportionment formula if the taxpayer can prove 'by "clear and cogent evidence" that the income attributed to the State is in fact "out of all appropriate proportions to the business transacted in that State," . . . or has "led to a grossly distorted result . . . ."'" _____ U.S. at _____, 77 L.Ed.2d at 556.

As previously noted, there is no issue before us relative to the Board of Tax Appeals' conclusion the apportionment formula had not been unconstitutionally applied herein.

Based on the rationale heretofore expressed and authorities cited, we conclude:

1. The absence in UDITPA of any specific reference to combined report method of allocation of income and expenses does not preclude its appropriate application to a unitary business;

2. The combined report method of allocation of income and expenses is wholly consistent with and a natural extension of the allocation and apportionment purpose of UDITPA and its three-factor formula rather than an exception thereto; and

3.  K.S.A. 79-32,141 authorizes utilization of the combined report method of allocation of income and expenses when it is properly determined two or more corporations are engaged in a multi-state unitary business.

The judgment of the district court sustaining the order of the Board of Tax Appeals is affirmed.

PRAGER, J., not participating.