(779 P.2d 457)

No. 63,428

THE FIRST NATIONAL BANK OF MANHATTAN, KANSAS, *Appellant*, v. KANSAS DEPARTMENT OF REVENUE, *Appellee*.

Opinion filed August 25, 1989.

*Charles W. German, Erich P. Hahn*, and *Jan F. Call*, of Stinson, Mag & Fizzell, of Overland Park, for appellant.

*David Prager, III*, attorney, and *Mark A. Burghart*, general counsel, of Kansas Department of Revenue, of Topeka, for appellee.

Before ABBOTT, C.J., BRAZIL, J., and RICHARD W. WAHL, District Judge Retired, assigned.

BRAZIL, J.: The First National Bank of Manhattan, Kansas, (First Bank) appeals from a Board of Tax Appeals (BOTA) order finding First Bank must pay a privilege tax based only on First Bank's taxable income and that First Bank and First Manhattan Bancorporation (Bancorp), a holding company which owns a majority of First Bank's stock, may not file a consolidated tax return for purposes of determining Kansas income tax liability. First Bank also appeals the BOTA's finding that Bancorp and First Bank may not be treated as a unitary business for tax purposes. We affirm.

First Bank is a nationally chartered bank formed in 1887,

which conducts all its business in Kansas. Bancorp is a holding company formed in 1972 for the sole purpose of holding the stock of First Bank. Bancorp owns all of First Bank's stock with the exception of the directors' qualifying shares. Bancorp has a debt obligation arising out of the purchase of the stock of the bank. The debt obligation is funded by First Bank declaring a quarterly dividend which passes to Bancorp to pay principal and interest on the debt.

For 1981 and 1982, First Bank and Bancorp filed consolidated federal income tax returns. First Bank was also required to pay a state tax for the privilege of doing business in Kansas pursuant to K.S.A. 1988 Supp. 79-1107. The tax is measured according to First Bank's net income for the next preceding taxable year. In 1982 and 1983, First Bank filed its initial Kansas privilege tax return. First Bank subsequently amended the privilege tax returns so as to compute its privilege tax liability on the basis of the consolidated net income of First Bank and Bancorp. The privilege tax returns documented interest expenses incurred by Bancorp of $207,748 for the 1982 return and of $142,588 for the 1983 return. The interest payments made by Bancorp reduced First Bank's privilege tax liability for both years.

The Kansas Department of Revenue sent First Bank a notice of assessment of additional Kansas privilege tax and interest in the amount of $16,033. A hearing before the Director of Taxation was held in which the Director concluded that First Bank is subject to the privilege tax, that Bancorp is subject to the general corporate income tax, and that it is not appropriate to consolidate the income of First Bank and Bancorp so as to include the interest of Bancorp's obligations in computing First Bank's privilege tax obligation. The Director found that the fact First Bank and Bancorp filed a consolidated federal income tax return did not mean consolidated federal taxable income must be utilized for computing state tax liability. The Director also determined that First Bank and Bancorp are not unitary businesses and, even if they were, consolidation would not be appropriate because First Bank and Bancorp are subject to different state taxes. Finally, the Director determined that K.S.A. 79-32,142, governing consolidated returns, does not require consolidation of First Bank and Bancorp. The Director approved the assessment of First Bank.

First Bank appealed from the Director's order to the BOTA.

The BOTA sustained the Director's order, finding that First Bank, as a privilege taxpayer, and Bancorp, as a corporate taxpayer, are subject to different tax rates and adjustments and should not be consolidated for tax payment. The BOTA also found a lack of unity of operation between Bancorp and First Bank and refused to treat them as a unitary business for tax purposes.

First Bank filed a motion for rehearing, which was denied. First Bank appealed pursuant to K.S.A. 1988 Supp. 74-2426(c)(3), which grants this court jurisdiction to review action by the BOTA pertaining to income taxes assessed by the Director of Taxation.

In *In re Appeal of News Publishing Co.*, 12 Kan. App. 2d 328, Syl. ¶ 1, 743 P.2d 559 (1987), this court discussed the proper scope of review governing a BOTA decision:

"In reviewing the action of the Board of Tax Appeals, this court is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily, or capriciously; (2) the administrative order was substantially supported by evidence; and (3) the action was within the scope of its authority. However, while matters of assessment and taxation are administrative in character and the judiciary may not substitute its judgment for that of the administrative agency, construction of statutory language is a proper judicial function."

The Kansas Supreme Court stated:

"The interpretation of a statute is a question of law and it is the function of a court to interpret a statute to give it the effect intended by the legislature."

"While the administrative interpretation of a statute should be given consideration and weight it does not follow that a court will adhere to the administrative ruling where the statute is clear and the administrative ruling is erroneous. The final construction of a statute rests within the courts." *Amoco Production Co. v. Armold, Director of Taxation,* 213 Kan. 636, Syl. ¶¶ 4, 5, 518 P.2d 453 (1974).

First Bank is subject to a privilege tax pursuant to K.S.A. 1988 Supp. 79-1107, which states in relevant part:

"Every national banking association and state bank located or doing business within the state shall pay to the state for the privilege of doing business within the state a tax according to or measured by its net income for the next preceding taxable year to be computed as provided in this act. Such tax shall consist of a normal tax and a surtax and shall be computed as follows:

(a) The normal tax shall be an amount equal to 4 ¼% of such net income; and

(b) the surtax shall be an amount equal to 2 ⅛% of such net income in excess of $25,000.

"The tax levied shall be in lieu of ad valorem taxes which might otherwise be imposed by the state or political subdivisions thereof upon shares of capital stock or the intangible assets of national banking associations and state banks."

Net income is defined as:

"[T]he Kansas taxable income of corporations as defined in K.S.A. 79-32,138, and amendments thereto, plus income received from obligations or securities of the United States or any authority, commission or instrumentality of the United States and its possessions to the extent not included in Kansas taxable income of a corporation and income received from obligations of this state or a political subdivision thereof which is exempt from income tax under the laws of this state; less dividends received from stock issued by Kansas Venture Capital, Inc. to the extent such dividends are included in the Kansas taxable income of a corporation, interest paid on time deposits or borrowed money and dividends paid on withdrawable shares of savings and loan associations to the extent not deducted in arriving at Kansas taxable income of a corporation." K.S.A. 1988 Supp. 79-1109.

K.S.A. 1988 Supp. 79-32,138 defines Kansas taxable income of a corporation as the "corporation's federal taxable income for the taxable year with the modifications specified in this section." K.S.A. 1988 Supp. 79-32,109(a) instructs that any term used in the act has the same meaning as when used in a comparable context in the federal Internal Revenue Code. The statutes provide that First Bank must pay a privilege tax based on the bank's federal taxable income for the preceding year.

1. First Bank's "net income."

First Bank contends that, because Bancorp and First Bank file a consolidated federal income tax return, First Bank's federal taxable income, which constitutes "net income" for purposes of the Kansas privilege tax, is the federal consolidated taxable income. First Bank supports this contention by arguing that net income is defined as "federal taxable income" and that consolidated federal income is a single amount, not the aggregate of the separate incomes of the consolidating corporations.

In *United States v. Manor Care, Inc.*, 490 F. Supp. 355 (D. Md. 1980), the court stated the general rule for filing consolidated income tax returns:

"(1) that consolidated taxable income be determined by taking into account the separate taxable income of each member of the group and (2) that the separate taxable income of a member of a group be computed in accordance with the provisions covering the determination of taxable income of separate corporations." 490 F. Supp. at 358.

The defendant in *Manor Care* argued that several corporations should be allowed to compute their income as one business unit. The court rejected this argument, stating that §§ 1501 *et seq.* of the Internal Revenue Code do not allow affiliated corporations to be taxed as a single entity. 490 F. Supp. at 358. *Manor Care* illustrates that First Bank's federal taxable income should be

separated from the consolidated income of First Bank and Bancorp.

The facts indicate that First Bank and Bancorp originally filed separate federal income tax returns for 1981 and 1982. The returns were later amended to consolidate First Bank and Bancorp under § 1501 of the Internal Revenue Code. The Kansas privilege tax returns in question were amended to be consistent with the federal consolidated filings. These facts indicate that the separate net incomes of First Bank and Bancorp are available and could be used to figure the state taxes of the entities individually.

The Department of Revenue lends further support to the argument that "net income" as used in K.S.A. 1988 Supp. 79-1107 means only the federal taxable income of First Bank, and that federal consolidation does not dictate consolidation for state tax purposes, by pointing to the plain language of K.S.A. 1988 Supp. 79-32,138, which states in relevant part: "Kansas taxable income of *a corporation* taxable under this act shall be *the corporation's* federal taxable income for the taxable year with the modifications specified in this section." (Emphasis added.) The singular use of the word "corporation" supports the Department of Revenue's interpretation that each corporation has an individual taxable income which may be used as a basis for taxation.

K.S.A. 79-1110 states that every "national banking association, bank, trust company and savings and loan association shall be subject to other provisions of the Kansas income tax act applicable to other corporations . . . insofar as the same can be made applicable." K.S.A. 79-32,142, governing consolidated returns, provides:

"(a) In the event two or more corporations file federal income tax returns on a consolidated basis, and in the event that all of such corporations derive all of their income and expenses from sources within Kansas, then, and in such events, such corporations shall file consolidated returns for purposes of determining their Kansas income tax liability the same as if such corporations were one corporation.

"(b) The director may permit or require any group of affiliated corporations to file consolidated returns under regulations to be promulgated by the director where the director determines, that the filing of such consolidated returns is necessary to clearly reflect the Kansas taxable income of the affiliated group. For purposes hereof, any affiliated group means any group of corporations permitted to file a consolidated return for federal income tax purposes."

First Bank argues that the statutes mandate that they file a

consolidated state return because First Bank and Bancorp file consolidated federal income tax returns and both derive all of their income and expenses from sources in Kansas.

The Department of Revenue argues that K.S.A. 79-32,142 cannot be made applicable in this case because to allow consolidation would cause Bancorp, a corporation, to be subject to the privilege tax. K.S.A. 1988 Supp. 79-1107 clearly instructs that the privilege tax affects national banking associations and state banks located or doing business in Kansas whereas Bancorp is subject to paying corporation taxes pursuant to K.S.A. 1988 Supp. 79-32,110(c). The corporate income tax and privilege tax differ in many significant ways. Privilege tax is measured by Kansas taxable income for the preceding year, whereas corporate tax is measured by Kansas taxable income for the current year. K.S.A. 1988 Supp. 79-1107; K.S.A. 1988 Supp. 79-32,138. The computation of taxable income differs between privilege taxpayers and corporate taxpayers because the adjustments to income are different. The rate of taxation for privilege taxpayers is 4.25% on the first $25,000 income and 6.375% on income over $25,000, whereas the rate of taxation for corporate taxpayers is 4.5% on the first $25,000 income and 6.75% on income over $25,000. K.S.A. 1988 Supp. 79-1107; K.S.A. 1988 Supp. 79-32,110(c).

The differences in the privilege tax and corporate tax are significant. The BOTA based its decision that First Bank and Bancorp may not file a consolidated return in part on those differences. Although the BOTA's rationale is not binding, it is persuasive. The differences between the privilege tax and the corporate tax lead us to the conclusion that a privilege tax filer and a corporate tax filer should file separate returns. K.S.A. 79-32,142 cannot be made applicable to consolidate the incomes of First Bank and Bancorp because of the differences in the rules governing privilege taxation and corporate taxation.

2. Unitary business.

First Bank argues that the BOTA erred by refusing to treat First Bank and Bancorp as a unitary business for privilege tax purposes.

K.S.A. 79-32,141 authorizes the Department of Revenue to require the combined report method of allocation of income, deductions, credits, and allowances of two unitary corporations. In *Pioneer Container Corp. v. Beshears*, 235 Kan. 745, 747, 684

P.2d 396 (1984), the court discussed the concept of a unitary business.

"In tax law the concept of unitary business arises when a corporation has one or more subsidiaries or divisions which are dependent to or upon, or contribute to the parent corporation or other subsidiaries or divisions so, in essence, to constitute a homogenous enterprise. When such an entity exists it may be described as a unitary business and in determining the tax liability of the given subsidiary or division the taxing authority may consider the entire income of the unitary business and apportion taxes on the basis of the income attributable within the jurisdiction."

The court adopted the following test to determine whether a business is unitary. The business must have " 'unity of ownership; unity of operations as evidenced by central purchasing, accounting and management; and, unity of use in its centralized executive force and general system of operation.' " 235 Kan. at 749.

In *F. W. Woolworth Co. v. Taxation & Revenue Dept.*, 458 U.S. 354, 73 L. Ed. 2d 819, 102 S. Ct. 3128 (1982), the Court reiterated the factors tending to prove a unitary business exists. The factors include functional integration, centralization of management, and economies of scale, which are "factors of profitability" arising from the operation of the business as a whole. 458 U.S. at 364. The Court found no unitary business existed and contrasted the situation in *F. W. Woolworth Co.* with the case of *Exxon Corp v. Wisconsin Dept. of Revenue*, 447 U.S. 207, 65 L. Ed. 2d 66, 100 S. Ct. 2109 (1980), in which a unitary business was found to exist based on the following factors:

" 'long-range planning for the company, maximization of overall company operations, development of financial policy and procedures, financing of corporate activities, maintenance of the accounting system, legal advice, public relations, labor relations, purchase and sale of raw crude oil and raw materials, and coordination between the refining and other operating functions "so as to obtain an optimum short range operating program" ' 447 U.S. at 211." 458 U.S. at 370.

In this case, Bancorp was formed solely for the purpose of holding the stock of First Bank and performs no other business operations. Bancorp has no employees or officers and owns no property with the exception of several files. The president of First Bank performs Bancorp's only duties, which include writing four quarterly checks to the debenture holders and paying Bancorp's bank loan. The president is not compensated for that service. The services First Bank provides Bancorp are minimal.

The businesses do not comprise a homogenous entity but rather are distinct enterprises lacking a centralized executive force and unity of operations. First Bank and Bancorp should not be treated as a unitary business for privilege tax purposes.

Even if we were to decide First Bank and Bancorp constitute a unitary business, filing a combined return would not be appropriate because First Bank and Bancorp are subject to different types of taxes, different tax rates, and different measures of income. In Hellerstein's hornbook on taxation, a footnote discussing unitary taxation states: "Combination is not practicable for taxable corporations, one or more of which is taxed by a State in a manner that varies significantly from its method of taxing other corporations within the unitary business." 1 Hellerstein, State Taxation: Corporate Income and Franchise Taxes 676 n.131 (1983).

3. True reflection of First Bank's income.

First Bank argues that it is necessary to combine the incomes of First Bank and Bancorp to clearly reflect First Bank's income. First Bank argues that the interest Bancorp pays on the debt incurred from purchasing First Bank's stock should be deducted from net income under K.S.A. 1988 Supp. 79-1109, which provides a deduction for "interest paid on time deposits or borrowed money."

At trial, the chairman of the Board of Directors of First Bank testified that the sole purpose of Bancorp is to hold First Bank's stock. He also made the following statement regarding the reason Bancorp was formed:

"I was [involved in the bank's business], in that I believe I was on the Board of Directors, and my father was the president, and our family owned a fairly sizeable portion of stock. And so I was the primary motivator to form the holding company because I'd read about it, and I felt that that was the only way that we could afford to buy bank stock because we couldn't afford to buy it and pay the interest as individuals. I'd bought some in the 10 previous years since I'd come back to Manhattan and gone into business, and I just couldn't carry the debt if I wanted to buy any substantial amount. That was the only way it could be done pragmatically."

"[W]e had a director that—an outside director who was, by our standards in Manhattan, wealthy, and he was taking a more active interest and role in the bank. And I did not feel that it was in the bank's best interest, and certainly our family's best interest that because he had, and still has, far greater assets than we, than our family has, to allow him to become a greater force than he already was. He's a very aggressive and successful businessman. I always had some difficulty in getting along with him and, frankly, I was concerned. And so I read about

holding companies, and they were relatively new, and I felt by doing this that I could improve our position and hopefully, over a period of time, lessen his influence. And that's exactly the way it worked out."

This testimony indicates that Bancorp was formed to benefit the Hostetler family, not First Bank.

K.S.A. 1988 Supp. 79-1107 imposes a privilege tax on "[e]very national banking association and state bank." K.S.A. 1988 Supp. 79-1109 allows the bank to deduct interest paid on borrowed money. First Bank does not pay interest which could be deducted. The interest paid by Bancorp on the debt incurred from purchasing First Bank stock should not be allowed as a deduction. Bancorp is a corporation, not a bank. Bancorp functions to benefit the Hostetler family. First Bank's true income must be figured without considering the assets or liabilities of Bancorp.

Affirmed.